UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MOHAMED RABIE MOHAMED AWWAD NASSER,

               Petitioner,

     v.

TODD BLANCHE et al.,[1]

               Respondents.

CASE NO. 2:26-cv-01304-JHC

ORDER

## I

### INTRODUCTION

This matter comes before the Court on Mohamed Rabie Mohamed Awwad Nasser's habeas petition. *See* Dkt. # 1. The Court has considered the materials filed in support of and in opposition to the petition, the rest of the file, and the applicable law. Being fully advised, for the reasons below, the Court GRANTS the Petition.

//

[1] The full list of Respondents is Todd Blanche, Acting Attorney General of the United States; Markwayne Mullin, Secretary, United States Department of Homeland Security; Julio Hernandez, Acting Seattle Field Office Director, United States Citizenship and Immigration Services; Bruce Scott, Warden of Immigration Detention Facility; and United States Immigration and Customs Enforcement. This order refers to the named Respondents as "Respondents" or "the government."

ORDER - 1

## II

### BACKGROUND

These facts are undisputed.  Petitioner is detained at the Northwest ICE Processing Center (NWIPC).  Dkt. # 1 at 1.  He is a citizen of Egypt who arrived in the United States on September 2, 2024.  Dkt. # 9 ¶ 4.  He was detained by Border Patrol the same day and, since he had been apprehended within 14 days of his last purported entry to the United States within 100 miles of the border, he was processed for expedited removal under INA § 235.[2]  *Id.* ¶ 5.  After two months of detention, Petitioner was charged with removability under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I).  *Id.* ¶ 10.  These INA provisions correspond to 8 U.S.C. § 1182(a)(6)(A)(i), which generally provides for inadmissibility for any noncitizen present in the country without being admitted or paroled or "at any time or place other than as designated by the Attorney General," and 8 U.S.C. § 1182(a)(7)(A)(i)(I), which provides for inadmissibility for noncitizen arrivals lacking certain documentation.

Though Petitioner submitted an asylum application in November 2024, he was ordered removed to Egypt on December 18, 2024.  Dkt. # 9 ¶ 12.  Petitioner appealed the removal order. *Id.* ¶ 8.  The government transferred Petitioner to the NWIPC in February 2025, *id.* ¶ 14, and then the Anchorage Jail, *id.* ¶ 16.  On June 16, 2025, the Board of Immigration Appeals (BIA) affirmed the denial of asylum but remanded Petitioner's case to an immigration judge (IJ) to reconsider withholding of removal.  *Id.* ¶17.  Two weeks later, he was returned to the NWIPC. *Id.* ¶ 18.  In September 2025, the IJ granted Petitioner withholding of removal, and the order became final on October 4, 2025.  *Id.* ¶ 20.

---

[2] Habeas petitions and their associated briefing commonly refer to the sections of the INA as they appear in the enrolled bill and not by citation to the United States Code.  INA § 235 is codified at 8 U.S.C. § 1225.

ORDER - 2

The government then began to pursue third-country removal. From December 2025 to April 2026, Petitioner refused to cooperate with the government's efforts to remove him to a third country, refusing to name any third country to which he would be willing to travel or sign any documents related to his expulsion. *Id.* ¶¶ 21–30. In January, Petitioner was served a warning for failure to depart. *Id.* ¶ 22. Despite the foregoing, the government asserts in a sworn declaration that it "believes there is a significant likelihood of removal in the reasonably foreseeable future if the Petitioner assists with his removal. The Petitioner has a valid travel document." *Id.* ¶ 30. Petitioner filed the present petition on April 14, 2026. *See generally* Dkt. # 1.

Petitioner now seeks a writ of habeas corpus. *See generally* Dkt. # 1.

### III

#### DISCUSSION

A.    Legal Standards

1.    Habeas relief

Federal district courts have the authority to grant a writ of habeas corpus. 28 U.S.C. § 2241(a). But this relief can be extended only under certain conditions. *See* 28 U.S.C. § 2241(c). One such condition is if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" *Id.* "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

2.    Due process

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. It "applies to all 'persons' within the United

ORDER - 3

States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases); *see also Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) ("'It is well established that the Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings.").

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). And the Supreme Court has held that noncitizen "detainees are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *J. G. G.*, 604 U.S. at 673 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

In evaluating how much process is due in the immigration context, courts have recently applied the three-factor balancing test from *Mathews v. Eldridge*. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) ("*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."). Under this test, determining whether a governmental action violates "the specific dictates of due process [ ] requires consideration of three distinct factors," including the affected private interest, the risk of an erroneous deprivation of that interest given procedural safeguards, and the government's own interests in the challenged process. *Matthews v. Eldridge*, 424 U.S. at 335.

B.    Analysis

1.    Constitutionality of continued detention

Petitioner contends that his detention is unconstitutional since his removal is not reasonably foreseeable. He says that under *Zadvydas*, the Fifth Amendment's due process guarantee prevents the indefinite detention of noncitizens, who may show that their detention is

ORDER - 4

indefinite after a "presumptively reasonable" six-month period of detention.  Dkt. # 1 at 6 (citing *Zadvydas*, 533 U.S. at 701).  Petitioner says that his detention is indefinite because, first, he cannot be removed to Egypt, since he was granted withholding of removal in September 2025, and second, the government has not pursued or otherwise indicated that he will be removed to a third country.  *Id.* at 19.  And because he has now been in custody over seven months since he was granted withholding of removal, the presumptively reasonable period to remove him has passed.  *Id.*  Petitioner contends that there is now "'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,'" meriting his release.  *Id.* at 19 (citing *Zadvydas*, 533 U.S. at 701).

The Court finds that Petitioner has made the initial showing under *Zadvydas*.  The removability period began on October 4, 2025, and ran until April 4, 2026. Dkt. # 9 ¶ 20.  During that period, the government's detention of Petitioner was presumptively reasonable.  *See Zadvydas*, 533 U.S. at 701.  Since that period has elapsed, the government must now respond "with evidence sufficient to rebut" Petitioner's showing that removal is reasonably foreseeable. *Id.*

The government's responds that Petitioner's continued detention is not unreasonable because Petitioner has not cooperated with its efforts to remove him to a third country.  *See* Dkt. # 8 at 6–7 (citing *Pelich v. INS*, 329 F.3d 1057, 1061 ("A [noncitizen] cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the INS's efforts to remove him.")); *see also* Dkt. # 9 ¶¶ 21–30 (detailing Petitioner's alleged noncooperation, such as his refusal to name a third country to which he would be willing to travel and his refusal to sign any documents related to this removal).  The government argues that his noncooperation "tolls the removal period" and "is the decisive factor" under *Zadvydas*, and so Petitioner "cannot demonstrate that removal is not reasonably foreseeable." *Id.* at 7.

ORDER - 5

Courts in this Circuit, however, have found noncooperation in cases more extreme than here. In those cases, the detainees made much greater efforts to frustrate removal proceedings. For example, the petitioner in *Pelich* misled the INS, providing it with "conflicting information regarding his name, his parents' names, his parents' birthplaces and residences, his birthplace and his nationality," and refusing to complete a Polish passport application. 329 F.3d at 1059; *see also Sugden v. Clark*, 2010 WL 3787110, at *4 (W.D. Wash. Aug. 25, 2010) (petitioner failed to cooperate with his removal by making "misrepresentations regarding his identity and citizenship"). In *Lema v. INS*, the petitioner, who was Ethiopian, told the Ethiopian consulate that he was Eritrean, preventing his receipt of travel documents from that country for removal purposes. 341 F.3d 853, 855, 857 (9th Cir. 2003). In other cases, habeas petitioners found uncooperative have refused to travel even when their documents were secured. *See, e.g.*, *Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir. 2008) (rejecting habeas petition where petitioner refused to travel despite the government twice completing the process); *Andemicael v. Noem*, 2025 WL 3725651, at *4 (C.D. Cal. Nov. 14, 2025) (denying habeas petition where petitioner refused to travel after government "successfully completed the arrangement and travel documents for Petitioner's removal to Eritrea").

Here, Petitioner's conduct does not amount to noncooperation sufficient to defeat his *Zadvydas* claim. Petitioner's refusal to provide any third countries to which he would be willing to travel does not amount to affirmative misrepresentation or refusal to apply for travel documents as in *Pelich* and *Lema*. Further, that Petitioner "refused to identify countries with which he has ties is insufficient to constitute a rebuttal" to his initial showing that his removal is not reasonably foreseeable. *See Samadi v. Bondi*, 2026 WL 1172917, at *2 (W.D. Wash. Apr. 30, 2026); *see also Kara v. Bondi*, 2026 WL 322772, at *4 (W.D. Wash. Feb. 6, 2026) (failure to identify third country options for removal not basis to defeat *Zadvydas* claim). More generally,

ORDER - 6

the government's bare assertion that a petitioner "was 'determined as not being cooperative in obtaining a travel document'" has been found to be insufficient to deny habeas petition. *See Ghasedi v. Wamsley*, 2025 WL 3699705, at *6 (W.D. Wash. Dec. 1, 2025). And beyond the government's hypothesis that it could secure travel documents if Petitioner cooperated, the government has otherwise "offered no evidence that travel documents for [P]etitioner have even been requested from any third country," dooming their effort to rebut Petitioner's *Zadvydas* showing. *Baltodano v. Bondi*, 815 F. Supp. 3d 1191, 1199 (W.D. Wash. 2025).

Thus, the government has failed to show cause why the writ of habeas corpus should not issue on the ground that Petitioner's removal is not reasonably foreseeable, and thus his continued detention offends due process. This conclusion also requires that the government not re-detain Petitioner without notice, a hearing, and changed circumstances, as this Court has ruled in similar circumstances. *See, e.g.*, *Faqeri v. Scott*, 2026 WL 194475 (W.D. Wash. Jan. 26, 2026); *Kumar v. Wamsley*, 2026 WL 251798 (W.D. Wash. Jan. 30, 2026); *cf. Y.M.M. v. Wamsley*, 2025 WL 3101782, at *2 (W.D. Wash. Nov. 6, 2025) (re-detention absent changed circumstances violates due process).

2.      Procedural due process claim against third-country removal

Next, Petitioner contends that to comply with the due process requirements of the Fifth Amendment, the INA, and the CAT,[3] the government must provide Petitioner meaningful notice and an opportunity to respond to any attempt to remove him to a third country in any later reopened removal proceedings. Dkt. # 1 at 20–21. Petitioner says that he must be allowed to make a "fear-based claim against his removal to a third country," and that ICE's current process

---

[3] The Court notes that in the pertinent heading of Petitioner's argument, he refers to the Administrative Procedure Act (APA) but then makes no argument about its application here. *See* Dkt. # 1 at 21; *see also* Dkt. # 8 at 10–11 (government's own APA argument). The Court thus does not address the APA.

ORDER - 7

does not satisfy due process because it allows for third country removal with essentially no process and with "flagrantly insufficient notice (6–24 hours)." *Id.* at 21. The government responds that Petitioner is already receiving all the process he is due, as shown by his "post-order custody review" (POCR), which concluded that he remained a flight risk and was not assisting in his removal, justifying continued detention. Dkt. # 8 at 8–9.

The Court disagrees with the government's argument that the POCR provides sufficient process. It is not clear that the Petitioner can use the POCR process to object to any attempts to remove him to specific third countries, were the government to develop such plans. The government argues that the "standard post-order review process has been actively implemented," Dkt. # 8 at 9, but administrative regularity (to the extent that it even occurred) does not bear on the core *Zadvydas* issue. Absent a likelihood of his removal, Petitioner's detention is now unreasonable, regardless of the process used to perpetuate his detention.

The Court also agrees with many of its sister courts in this District and Circuit that the requirements of due process "cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings," *contra* the government's position at Dkt. # 8 at 10, but rather, "the removal proceedings *must* be reopened so that a hearing can be held." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) (emphasis added) (citing *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1011 (W.D. Wash. 2019)); *see also Arenado-Borges*, 2025 WL 3687518, at *6 ("[T]o comply with due process, ICE must provide notice and a meaningful opportunity for the petitioner to present any claim of fear of persecution or harm upon removal to a newly designated third country."); *Baltodano*, 2025 WL 2987766, at *3 (same); *Esmaeli v. Noem*, 2026 WL 240661, at *6 (S.D. Cal. Jan. 29, 2026) (same). The Court concludes that Respondents have not shown cause as to why the habeas writ should not be granted on the basis that due process does not require a hearing before Petitioner be removed to a third country.

ORDER - 8

Given the conclusions above, the Court need not reach the substantive due process issue raised by Petitioner.

## IV

### CONCLUSION

For the reasons above, the Court GRANTS the habeas petition (Dkt. # 1) and ORDERS as follows:

(1) Respondents shall release Petitioner from detention within 24 hours of this order. Upon release, Petitioner shall be subject to reasonable conditions of supervision compliant with 8 U.S.C. § 1231;

(2) Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining Petitioner unless and until he is provided with adequate notice and a hearing before an immigration court to determine whether re-detention is appropriate;

(3) Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf may not remove Petitioner to any third country unless and until he is provided with adequate notice and a hearing before a neutral decisionmaker to determine whether such removal is appropriate; and

(4) The Clerk is DIRECTED to send uncertified copies of this Order to all counsel of record.

Dated this 7th day of May, 2026.

John H. Chun
United States District Judge

ORDER - 9